## THE MARY BRADFORD.[1]

(*District Court, E. D. New York.* June 28, 1883.)

BILL OF LADING—MASTER'S COPY—DELIVERY.

Where the master of a vessel executed bills of lading in quadruplicate, though there was no provision in the charter of the vessel for the execution of bills of lading, and delivered three of them to the shipper, who hypothecated them to secure advances made him, and the master then carried the fourth copy, duly indorsed, to the consignee of the vessel at the end of the voyage, and afterwards delivered the cargo to him on presentation of this bill of lading, *held*, that the master had authority to sign bills of lading, and that the master's copy was, in legal effect, a simple memorandum for his convenience, and not a contract by which the goods were to be delivered, and that the vessel was liable to the holder of the hypothecated bills of lading for the amount of the advances.

In Admiralty.

This was an action upon a bill of lading alleged to have been given by the master of the schooner Mary Bradford, for goods shipped on the schooner at Nickerie, Surinam, Dutch Guiana, to be transported to New York. The bill of lading being executed in quadruplicate, the master kept one copy and delivered the other three to R. J. Carbin, the shipper, by whom they were assigned to the libelant the Surinam Bank as security for the payment of a bill of exchange drawn on W. L. Carbin, at New York, for $4,800, which bill of exchange was never paid. The claimants alleged that at the time of the signing of the bills of lading the vessel was under a charter to W. L. Carbin, in which there was no provision for the signing or delivery of any bills of lading by the master; but that he did execute them and give them to R. J. Carbin, who indorsed one of them to W. L. Carbin and sent it to him at New York by the master. By virtue of this bill of lading the cargo was entered at the custom-house by W. L. Carbin, and was delivered to him. The master alleged that it was not till after the vessel had

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

been in the port of New York for several weeks after the completion of the voyage, and had sailed on a second voyage, that information came that the libelant claimed any interest in the cargo, and that this was gross laches on the part of the libelant.

*F. E. & A. Blackwell,* for libelants.

*Beebe & Wilcox,* for claimants.

BENEDICT, J. I am of the opinion that the master of the Mary Bradford had power to sign the bill of lading sued on, notwithstanding the fact that the charter-party contained no promise for the signing of bills of lading, and that upon the delivery thereof to the libelants, under the circumstances proved, the ship became bound to deliver the cargo to the libelants in accordance with the terms of the contract.

I am of the further opinion that the bill of lading produced by the master in New York, and by the agent of the claimants delivered to W. L. Carbin, was the master's copy of the bill of lading sued on, known to be such by the master, as well as the agent, of the schooner at the time it was delivered to W. L. Carbin, and that said bill of lading was, in legal effect, a simple memorandum for the convenience of the master, and not the contract by which the goods were to be delivered.

I am of the further opinion that the delivery to W. L. Carbin of the master's copy of the libelants' bill of lading by the agent of the claimants was a ratification of the master's act in delivering to R. J. Carbin the bill of lading sued on.

I am of the further opinion that the libelants have not lost their right of action upon the bill of lading sued on by laches; that they made advances upon the faith of the bill of lading in good faith, and are entitled to recover the amount thereof from the schooner in this action.

Let a decree be entered for $4,800, with interest from November 29, 1881.